### W. R. MATTHEWS v. THE STATE.

No. 5135.   Decided June 18, 1919.

**1.—Operating For Hire Auto Truck Without License—Insufficiency of the Evidence.**

Where, upon trial of operating for hire an auto truck without first obtaining license, under the Act of the Thirty-fifth Legislature, the evidence failed to show a violation of this statute, the conviction could not be sustained.

**2.—Same—Automobile Chauffeur—License—Insufficiency of the Evidence.**

Under the Act of the Thirty-fifth Legislature requiring license to operate a motor vehicle as a chauffeur, it is necessary that in order to bring it within the class of chauffeurs as defined in said Act, that he must operate the motor vehicle as such for compensation, wages or hire, and this would apply directly to the fact or relation of driver of the vehicle for such compensation, etc., and would exclude the idea that the vehicle or auto was used as an incident for delivering goods; and where the evidence showed that the defendant was an employee and drove the auto truck to deliver goods for his principal, there was no violation of the law.

Appeal from the County Court of El Paso. Tried below before the Hon. Will P. Brady.

Appeal from a conviction of operating for hire an auto truck without first obtaining license; penalty, a fine of one dollar.

The opinion states the case.

*Hudspeth & Harper* for appellant. Cited: Cohen v. State, 53 Texas Crim. Rep., 422; Love v. State, 31 id., 469; Standford v. State, 16 Texas Crim. App. 331; Williams v. State, 23 id., 499.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with op-. erating for hire an auto truck without first obtaining a license.

The evidence is without conflict to the effect that appellant was an employe of the Texas Oil Company as salesman, for which they paid him $110 per month as salary; that he drove the auto truck as such salesman for that company, took orders and delivered the goods "on the spot." That when he first accepted employment from the company he used vehicles drawn by horses, and received a salary of $85 per month, but he proved to be a very efficient solicitor and salesman and increased the business of the company rapidly. As his business increased his means of conveyance proved inadequate, and the company bought and put him in charge of the auto truck for the purpose of carrying on their business and increased his wages until it reached $110 per month. The only pay that he received was for his services as solicitor and salesman; that he was not paid anything as a chauffeur or for driving the auto truck; that he drove it himself, and had no chauffeur to assist him in his work. The evidence is uncontroverted that he received no pay from his employers for driving the auto truck as a means of carrying on their business in soliciting and delivering their goods to customers. This was the State's evidence. The defendant introduced no testimony, but the State used him as a witness without his objection, as it did the controlling agent of the Texas Oil Company's business in El Paso. He was convicted under the theory that these facts placed him within the requirements of the law, and that he should obtain a license as chauffeur to operate the auto truck under the circumstances mentioned.

The act under which this conviction occurred was passed by the Thirty-fifth Legislature at its General Session, beginning on page 474 of the published edition of the acts of that session. Section 14 of the act, found on page 477, reads as follows:

"No person shall employ for hire as a chauffeur of a motor vehicle any person not licensed as in this Act provided.

"No person shall allow a motor vehicle owned by him or under his control to be operated by any chauffeur who has no legal right to do so."

Section 25 of said Act provides that, "an application for a license to operate a motor vehicle as a chauffeur (and by 'chauffeur' is meant any person whose business or occupation is that he operates a motor vehicle for compensation, wages, or hire)," etc. This definition as well as the provisions of this act seem to apply to those who are known as chauffeurs and who operate motor vehicles as such chauffeur

for compensation, wages or hire. This is the legislative definition, and by this the court should be governed. It would seem from reading the definition of "chauffeur" that in order to bring him within that class he must operate the motor vehicle as such for compensation, wages or hire and it would further seem this would apply directly to the fact or relation of driver of the vehicle for compensation, wages or hire, and would seem to exclude the idea that the vehicle was used as an incident to carry on the business. If appellant was driving the auto truck for a stipulated sum or wages, or part of the profits that might arise from the use of the vehicle, when used for others, he might be within the definition given by the Legislature, but the relation, however, seems to be direct, that the chauffeur must operate the vehicle as such and for the purpose of so making money and should as chauffeur receive compensation for operating it. The writer does not understand that where a party is employed in soliciting orders and delivering goods as in this case, that his services and the use of the vehicle in delivering the goods would constitute him a "chauffeur" within this definition. Such seems to be the accepted idea wherever the matter has been discussed. We find in Vol. 11 of Corpus Juris on page 747, that a chauffeur is defined to be "the driver of an automobile; one who operates and propels an automobile one who drives or operates an automobile as a private servant or as a licensed public driver; a professional expert in the operation of automobiles; a man who drives an automobile for hire; any person operating a motor vehicle as machanic, employee, or for hire." The above is the general definition stated in the text. Under that will be found this statement in the note: "The accepted meaning of the word 'chauffeur' in every State where the term is used in a motor vehicle statute is a paid operator or employee, and includes in it the idea of compensation for the operation of the vehicle. In some of the States, such as Massachusetts, New Hampshire, Vermont, the clear distinction is made between the license of an 'operator' and the license of a 'chauffeur,' and in other States, such as Connecticut, Rhode Island, District of Columbia, Delaware, and Maine, where the law provides that all operators shall be licensed, the word 'chauffeur' is not used at all in the statutes, but the more inclusive word 'operator' is used. . . . 'as far as the automobile industry and users of motor vehicles are concerned,' it would only be by a strained and unnatural construction and foreign to the accepted usage that the term 'chauffeur' could be made to include operators other than employees for hire. The 'National Association of Automobile Manufacturers' and the 'American Automobile Association' use the word 'chauffeur' to mean 'an operator for hire,' and it is the opinion of the court that the word, as we believe we have shown, has always been used in that sense in dealing with motor vehicle legislation," citing Commonwealth v. Cooper, 37 Pa. Co., 277, 282, 285."

So it would seem from a reading of the Texas statute, viewed in the light of the general acceptation of the term "chauffeur," that where a license is required of the chauffeur for hire or wages,. it has a direct relation to his employment to run the vehicle itself for hire and not as an incident to the delivery of the goods, wares and merchandise of his employer. The employment in the latter case is to take orders and deliver the goods, not to run the auto, the auto being used as an incident for the purpose of soliciting orders and delivery of the goods. The chauffeur as contemplated by the statute has a direct relation to the hire for operating of the vehicle, while in soliciting and delivering goods it is an incident to his employment as a means of carrying on the business for which he receives no direct pay, as in this case. We are of opinion, therefore, appellant should not have been convicted.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*