## STATE *v.* FISHER

[No. 110, October Term, 1953.]

308

*Decided April 23, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *John L. Sanford, Jr., State's Attorney for Worcester County,* on the brief, for the appellant.

No brief and no appearance for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The State appeals here from a judgment and suspended sentence to pay a fine of $500 and costs, upon conviction for violation of certain provisions of the Workmen's Compensation Act. The indictment in three counts charged that the appellee, an employer engaged in an extra-hazardous occupation, unlawfully failed to secure compensation insurance or otherwise assure compensation for his employees. The appellee was represented by counsel and entered a plea of guilty. It was brought to the court's attention that an award of not to exceed $7,500 had been passed against him as a non-insurer by the State Industrial Accident Commission in favor of dependents, for an injury and death arising out of and in the course of the employment of a deceased employee; and that the award had not been paid. The court entered the judgment and imposed sentence and then, over the State's objection, suspended the sentence upon a representation that the appellee was unable to pay the fine imposed. These facts, supplementing the docket entries, were incorporated in the record by affidavit of the State's Attorney, certified by the trial court.

No brief was filed for the appellee, but the State contends that it has a right to appeal and that the court exceeded its statutory authority in suspending the sentence. There was no motion to dismiss the appeal, but we could hardly treat the point as waived or abandoned under the circumstances. In any event, we think the question is reviewable on appeal by the State.

In *State v. Adams*, 196 Md. 341, 347, Judge Markell, speaking for the Court, said that "Under the Act of 1892 [ch. 506; Code (1951), Article 5, Section 86] an appeal can be taken only after judgment, and presents for review not only questions presented by bills of exceptions but also questions appearing on the face of the record, formerly reviewable only on writ of error." He also noted that "apparently the right of review by writ of error originated in the common law and not in any statute," and that in *State v. Buchanan*, 5 H. & J. 317, it was held that a writ of error lies at the instance of the State, in a criminal prosecution to review a judgment sustaining a demurrer to an indictment and discharging the defendant. While it was held in the *Adams* case that the granting of a motion to suppress evidence was not reviewable on appeal by the State, Cf. *State v. Barshack*, 197 Md. 543, it was recognized that there is an exception, to the general rule that the State cannot appeal to this Court in a criminal case, in "cases which were—and still are * * *—reviewable on (or 'as on') writ of error, but since 1892 have also been reviewable on appeal in lieu of writ of error, * * *." Cf. *State v. James*, 203 Md. 113, 100 A. 2d 12. In a comment on the *Adams* case by Strahorn, in 12 Md. L. R. 68, it was suggested that the whole subject of appeal by the State should be examined by the legislature, in the light of recent changes in the scope of review on appeal by an accused and the fact that, in Maryland, double jeopardy is not a constitutional defense. But the suggestion has not been adopted.

The appeal in the instant case does not challenge the validity of the sentence, which was within the limits set by the Statute, but only the authority of the court to suspend the sentence imposed. The question is one that appears on the face of the record for the docket entries show that a proper sentence was imposed and then indefinitely suspended. For present purposes it seems clear that the judgment is final even though its enforcement is deferred. Cf. *Hite v. State*, 198 Md. 602, 606,

and *Pritchett v. State,* 140 Md. 310. We need not now consider whether the indefinite suspension could be set aside for cause, in the absence of probation or express reservations in the order, and if it could not, whether the suspension gratified the suspension statute. Cf. Code (1951), Article 27, sections 725 and 727, and Article 41, section 91 (f). See also *People v. Court of Sessions,* 36 N. E. 386 (N. Y.). The state does not challenge the form of the suspension order; it contends that the Statute creating the misdemeanor stripped the court of all power to suspend the sentence, except on the conditions specified in the Statute itself. Since it appears on the face of the record that the statutory conditions were not met, the question of the legality of the suspension is jurisdictional. Cf. *State v. Ward,* 95 Md. 118, *Kelly v. State,* 151 Md. 87, 100, and *Hite v. State, supra.* See also *United States v. Albrecht,* 25 F. 2d 93 (CCA 7th), and *United States v. Murray,* 275 U. S. 347 (jurisdiction to award probation after sentence reviewed upon writs of error). The right to require the enforcement of a sentence illegally suspended, by petition for writ of *mandamus,* has been sustained in many cases. *Ex Parte United States,* 242 U. S. 27; Note, 141 A. L. R. 1225, 1235. While the State's right to appeal "as on" writ of error in Maryland has been chiefly recognized in cases where the indictment was quashed, we think the principle has a somewhat wider application, and appeal lies in the circumstances of the instant case.

Code (1951), Article 101, Section 15 (3) (b) provides: "Any employer, subject to the provisions of this Article, who, after November first, nineteen hundred and fourteen, fails or refuses to submit to said Commission, as provided in the next succeeding paragraphs, the method he desires to adopt for assuring compensation, or who shall fail to secure insurance by one of such methods or who fails to pay compensation to an injured employee in accordance with the award of the Commission, shall be guilty of a misdemeanor, and shall be subject to a fine of not less than five hundred nor more than five thousand

dollars. Any fine levied against any employer failing or refusing to secure insurance as required by this Article shall be paid into the State Treasury and credited to the State Industrial Accident Commission, and be used for the payment, in whole or in part, of any award made against said employer by the State Industrial Accident Commission. All disbursements shall be made in the same manner as other monies of the State Industrial Commission are disbursed. Any part of said fine not required for the payment of an award as herein provided shall be transferred to the General Treasury. The Court may, in its discretion, remit any such penalty, provided the employer in default assures the compensation as provided in this section; and provided, further, that he has paid or secured to be paid any compensation or other benefits under this Article which may have been awarded against him."

The word "remit," according to the dictionary definitions, has a broader meaning than "suspend" and connotes an absolute forgiveness or annulment in the nature of a pardon. In *United States v. Felder*, 13 F. 2d 527 (D. C., S. D. N. Y.) it was held that the Federal statute authorizing a suspension of sentence did not include the power to remit a fine. Normally, the imposition of a fine carries with it the penalty of a jail sentence, if the fine is not paid. Code (1951), Article 38, section 4. Cf. *Backus v. State*, 118 Md. 536. To construe the statute as the State contends would, in effect, make the jail sentence mandatory unless the default were made good, although different considerations of policy might be involved. The general scheme of the section quoted seems to have been to enable the fine to be used, in the first instance at least, for the satisfaction of the award, and the discretion to remit the penalty is subordinated to this object alone. It may be doubted whether the conditions stated in Section 15 (3) (b) could be attached to a mere suspension of sentence. Cf. *Kelly v. State, supra.*

Code (1951), Article 27, section 725 provides: "The courts may suspend sentence generally or for a definite

time, and may make such orders and impose such terms as to costs, recognizance for appearance, or matters relating to the residence or conduct of the convicts as may be deemed proper; * * *." This language was enacted by the Act of 1902, Chapter 494, Section 304A; the earlier Act of 1894, Chapter 402, was more limited in its application. Its reenactment by the Act of 1927, Chapter 608, was merely to permit appeal to this Court by a defendant where a sentence was suspended prior to imposition. Legislative authority to suspend sentence upon a convicted infant under the age of fifteen seems to have existed since the Act of 1831, Chapter 208 (Code [1951], Article 27, Section 715). It is generally, though not universally, held that the power is not inherent in the courts, and did not exist at common law. See *Ex Parte United States, supra.* But see *People v. Court of Sessions, supra.*

The constitutional provision, Article 3, Section 60, that "The General Assembly of Maryland shall have the power to provide by suitable general enactment (a) for the suspension of sentence by the court in criminal cases; * * *," proposed by the Act of 1914, Chapter 453, ratified in November, 1915, was evidently designed to protect the existing statutory provision from attack on the ground that it violated the separation of powers doctrine, as held in some states. See *Niles, Maryland Constitutional Law,* p. 219. However, it may be noted that the requirement of "suitable general enactment," while it doubtless would not prohibit proper classification, would not seem to countenance a piecemeal treatment of the subject matter. Moreover, it is an established rule of statutory construction that repeals by implication are not favored; where possible, statutes dealing with the same subject matter should be construed as supplementary to each other. *Buchholtz v. Hill,* 178 Md. 280. In the instant case we think Section 15 (3) (b) of Article 101 can properly be construed as not repealing *pro tanto* Section 725 of Article 27, but as merely enabling the remission of the fine imposed under specified conditions.

A somewhat analogous situation exists in regard to the general statute relating to minimum penalties. Under Code (1951) Article 27, Section 728 it is provided that in "all cases where the law prescribing a punishment for crime fixes a maximum and a minimum penalty therefor, the judge of the Criminal Court of Baltimore and the several judges of the Circuit Courts of the counties may, in lieu of the minimum penalty so prescribed, impose a less penalty of the same character; * * *." Obviously, this statute would only be controlling in the case of laws existing at the time of its adoption (Act of 1906, Chapter 536), for one legislature cannot prohibit repeal or modification by its successors, even where it purports to do so. *Montgomery County v. Bigelow*, 196 Md. 413, 423. Nevertheless, it has been intimated that the statute could be given effect by construction, as against later acts fixing minimum penalties for specific crimes. See *Simmons v. State*, 165 Md. 155, 170 and *Kirschgessner v. State*, 174 Md. 195, 198. In the instant case we think the statutes are not so fundamentally inconsistent that they cannot be construed together so that both may be given effect.

*Judgment affirmed, with costs.*