*Shivani Dhingra Bajaj v. Rueben Bajaj*, No. 1267, Sept. Term 2023. Opinion filed on July 31, 2024, by Wells, C.J.


**APPEAL AND ERROR – NATURE AND GROUNDS OF APPELLATE JURISDICTION – NATURE AND SOURCE**

The jurisdiction of appellate courts, including the circuit court sitting in banc, is delimited by statute. Maryland Code Annotated, Courts and Judicial Proceedings Article (CJP) § 12-303 permits appeal to be taken from certain interlocutory orders entered by a circuit court in a civil case, including, at Subsection 12-303(3)(x), an order depriving a parent, grandparent, or natural guardian of the care and custody of his or her child, or changing the terms of such an order. Because CJP § 12-303 applies to an in banc panel of the circuit court, the in banc panel had jurisdiction to hear an appeal of an order partially depriving a parent of custody of his minor children. Const. art. 4, § 22; Maryland Rule 2-551.


**APPEAL AND ERROR – REVIEW – SCOPE AND EXTENT OF REVIEW – IN GENERAL – DISCRETION OF LOWER COURT – ABUSE OF DISCRETION**

Trial court abused its discretion where the custody and access order did follow logically from the facts found by the trial court and had no reasonable relationship to the trial court's announced objectives.

Circuit Court for Montgomery County
Case No. C-15-FM-22-000762

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1267

September Term, 2023

_____

SHIVANI DHINGRA BAJAJ

v.

RUEBEN BAJAJ

_____

Wells, C.J.,
Leahy,
Eyler, Deborah S.,
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wells, C.J.

_____

Filed: July 31, 2024

*Tang, Rosalyn, J., and Albright, Anne K., J.,
did not participate in the Court's decision to
designate this opinion for publication pursuant
to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Following a four-day merits hearing limited to issues of custody and access in the Circuit Court for Montgomery County, the court entered a Custody and Access Order ("Custody Order"). The trial court found that the appellant ("Mother") had created a "loyalty bind" with the parties' minor children, denying Father's requested 2-2-5-5 access[1] schedule on the basis that it was not in the minor children's best interest to be parted from Mother for five days at a time. The court also ordered a holiday schedule granting Father periods of custody longer than five days.

Father requested in banc review of the Custody Order. A panel of the circuit court held that the trial court had abused its discretion as it did not explain how the terms of the Custody Order could be reconciled with its own fact-finding. Mother appeals the in banc panel's ruling, presenting two questions for our review, which we have rephrased slightly:[2]

> 1. Whether the circuit court erred in denying Mother's Motion to Dismiss Father's Notice for In Banc Review.
>
> 2. Whether the in banc panel of the circuit court erred when it reversed and remanded the trial court's Custody Order.

---

[1] This custody arrangement would mean that the children would spend two days with Father, two days with Mother, five days with Father, then five days with Mother. Afterwards, the cycle would repeat, giving the parties equal access with the children but on a staggered basis.

[2] Mother phrased her questions presented as follows:

> 1. Did the Circuit Court err when it denied Mother's Motion to Dismiss Father's Notice for In Banc Review?
>
> 2. Did the In Banc Panel of the Circuit Court err when it reversed and remanded the trial court's Custody and Access Order?

Finding the in banc panel's analysis persuasive, we answer both questions in the negative and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal calls upon us to consider solely questions of law. We therefore recount the voluminous factual record only to the extent necessary to support our analysis.

The parties were married in India on March 31, 2012, and twin children were born to the marriage in 2015, a boy and a girl. Father was employed as the chief executive of White Star Investments and as a volunteer firefighter. Mother was a stay-at-home parent. Before the trial court, the parties disputed the degree to which each parent was involved in day-to-day care of the minor children. Mother testified at the merits hearing that Father was inattentive to the children's medical care, which Father disputed. Father testified that the children's nanny, Asha Lama, fulfilled the majority of childcare responsibilities, a contention with which the trial court ultimately agreed.

In 2021, the marital relationship broke down, and Father filed for custody and absolute divorce on February 14, 2022. Mother and the minor children left the marital home in March 2022. Mother testified that Father had hit the children and presented evidence of a bruise on one of the children to support her claim. Father testified that Mother withheld overnight access with the children until August 2022. Mother testified that she had not done what Father claimed. The trial court did not credit Mother's testimony. In May of 2022, Mother denied an overnight on the basis of her accusation that Father attempted to drown the parties' son, which the court did not credit.

The trial court ultimately concluded that Mother had deliberately estranged the minor children from Father. In an oral ruling issued on December 12, 2022, the court stated that Mother's having denied the children overnights with Father, and "coach[ing]" the children in order to "manufacture[]" fear of Father, created a "loyalty bind" between the children and Mother which aligned the children against Father. It also found that Mother's "anxiety" and "hypervigilance" were detrimental to the best interests of the minor children. But due to the strength of the minor children's alienation from Father, the trial court denied Father's requested 50-50, 2-2-5-5 division of physical custody, and granted Father visitation with the minor children on Wednesday nights until 7:00 p.m. and overnight custody on alternating weekends. The trial court ordered a holiday schedule, granting the parties custody for two weeks of the summer, and dividing the Christmas, Thanksgiving, and spring break holiday periods into two halves.

Father requested an in banc review on December 23, 2022. Mother filed a motion to dismiss on the basis that the in banc panel lacked jurisdiction to hear the matter, which she maintains before this Court. The in banc panel denied Mother's request. Following a hearing held on June 16, 2023, before a three-judge panel of the circuit court, the panel issued an Opinion and Order on July 26, 2023. The in banc panel held that, given the trial court's findings about the strength of the loyalty bind such that the children could not be parted from Mother for long periods, the trial court did not adequately explain why it also ordered extended periods of visitation to Father on holidays. Without disturbing the trial court's decision, the in banc panel remanded, asking the court to explain why the arrangement it ordered was in the children's best interests.

3

We will supply additional facts as necessary to support our analysis.

## DISCUSSION

### I. The In Banc Panel Had Jurisdiction to Review the Custody Order.

#### A. Standard of Review

In reviewing a decision of an in banc panel of the circuit court, generally, "it is the judgment of the trial court that is under review." *Hartford Fire Ins. Co. v. Est. of Sanders*, 232 Md. App. 24, 38 (2017). However, reviewing whether an in banc panel has jurisdiction over a decision of the trial court is a question of law that we review *de novo*. *Guillaume v. Guillaume,* 243 Md. App. 6, 11 (2019) (quoting *Hartford*, 232 Md. App. at 40).

#### B. Parties' Contentions

Mother contends that the in banc panel lacked jurisdiction to consider the Custody Order. She argues that the Maryland Constitution, and Maryland Rule 2-551 do not permit in banc review to be taken from non-final orders of the trial court. She contends that Maryland Code Annotated, Courts and Judicial Proceedings Article ("CJP") § 12-303, which allows for appeal of certain types of interlocutory orders of the trial court, does not apply to in banc review in the circuit courts. Thus, because the Custody Order arose from an underlying divorce action in which final judgment has not been entered, Mother argues, no statutory exception would have granted jurisdiction for in banc review of the Order. In the alternative, she argues that the custody order did not entirely deprive Father of custody, and therefore cannot be appealed under CJP § 12-303(3)(x).

Father responds that the Supreme Court of Maryland has held in banc review to be an alternative to review in the appellate courts. Additionally, the Court has applied statutes

4

that delineate appellate jurisdiction to also set the scope of an in banc panel's jurisdiction. Father also argues that the Custody Order was the type of order depriving custody of a minor child that can be appealed before final judgment, pursuant to CJP § 12-303(3)(x).

## C. Analysis

We first consider whether an in banc panel is entitled to hear a custody order as an interlocutory appeal. The ultimate source of jurisdiction for an in banc panel in the circuit court is Article 4, Section 22 of the Maryland Constitution, which permits review of "the decision or determination of any point, or question, by the Court." Maryland Rule 2-551 sets forth the procedure for that review.

We have long treated statutory limitations on the jurisdiction of the appellate courts as also applicable to the limitations of an in banc panel's jurisdiction. The Supreme Court of Maryland has held that "when no appeal from a circuit court order [can] be taken to the Court of Special Appeals [now called the Appellate Court of Maryland] . . . then no appeal can be taken to a court in banc." *Bd. of License Comm'rs for Montgomery Cnty. v. Haberlin*, 320 Md. 399, 407 (1990). "Generally, an appeal under § 12-301 of the Courts and Judicial Proceedings Article must be authorized in order for a court in banc to exercise jurisdiction." *Id.* (cleaned up). CJP § 12-301 is the statutory enactment of the final judgment rule, which states generally that appellate review is only permitted of final judgments. There are only three exceptions to Section § 12-301 and the final judgment rule: (1) interlocutory appeals as explicitly permitted by CJP §§ 12-302 (in criminal cases) and 12-303 (in civil cases); (2) appeals of judgments disposing of less than the entire action under Maryland Rules 2-602 and 8-602, and (3) under the collateral order doctrine. *See*

5

*Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 273-74 (2009) (quoting *Salvagno v. Frew*, 388 Md. 605, 615 (2005)). One exception especially relevant to this matter, found at CJP § 12-303(3)(x), stating that an order "[d]epriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order" creates an entitlement to an interlocutory appeal.

The crux of Mother's argument is that the terms of CJP § 12-303 apply only to appeals to the appellate courts, and not in banc review in the circuit court. In effect, she contends that Article 4, Section 22 should be read to limit in banc review to only final orders. She contends the custody order is not a final order subject to appellate review.

We find no support for this approach in our appellate case law interpreting Article 4, Section 22 and Rule 2-551. The Supreme Court of Maryland has made clear that Maryland law considers in banc review to be an alternative to appeal to this Court, rather than a limited form of appellate review. The Supreme Court of Maryland has held that ". . . the court in banc is a tribunal exercising appellate jurisdiction. It being established that the jurisdiction of the appellate courts of this State 'is at this time delimited by statute[.]'" *Estep v. Estep*, 285 Md. 416, 422 (1979), *abrogated on other grounds by Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51 (1992), *and abrogated on other grounds by Bienkowski v. Brooks*, 386 Md. 516 (2005) (cleaned up). In *Estep*, the Supreme Court of Maryland identified CJP § 12-301 as the applicable statute delineating the scope of an in banc panel's jurisdiction to review final orders of the circuit court. *Id.* However, the Court in *Estep* stated that the boundaries of the in banc panel's jurisdiction are set by the statutory boundaries of the general appellate jurisdiction. *Id.* at 423 n.8.

Mother's argument, that an in banc panel's jurisdiction is separate and more limited than this Court's, cannot be reconciled with *Estep*. In effect, she asks us to apply some appellate cases construing Article 4, Section 22 of the Maryland Constitution, but not others. We decline to do so. The statutory provisions which grant appellate jurisdiction to this Court, CJP § 12-301 *et seq.*, control the grant of appellate jurisdiction generally, not only in the appellate courts, but to in banc tribunals as well.

Further, there is no question that provisions of Subtitle 3, Title 12 of the Courts and Judicial Proceedings Article other than CJP § 12-301 define the statutory grant of appellate jurisdiction; in general, we apply these to in banc panels with the same force as to an appellate court. For instance, in *State v. Phillips*, 457 Md. 481 (2018), the Supreme Court of Maryland applied limitations to appellate jurisdiction found in CJP § 12-302 to an in banc panel. *Id.* at 512–13.[3] While it appears that neither we nor the Supreme Court have had occasion to say so directly in previous cases, it clearly follows that appeals which would typically be heard in the Appellate Court pursuant to CJP § 12-303 may also be

---

[3] *Phillips* dealt with the type of interlocutory order which, unlike here, "clearly . . . could not have been appealed by the State directly to the [Appellate Court]" until entry of final judgment; such an order cannot be reviewed in banc until final judgment is entered. *Id.* at 508, 512. However, the Supreme Court noted that that this principle applies "[s]ubject to any law that, in a particular circumstance, would provide otherwise[.]" *Id.* at 512.

To the extent that *Phillips* applies to the matter at bar, CJP § 12-303 is a law which "provide[s] otherwise[.]" *Id.* The *Phillips* Court sought to "establish[ ] the true comparability and compatibility of in banc review with an appeal to the [Appellate Court] and this Court"; in circumstances where appeal to the Appellate Court would only be proper from a final judgment of the circuit court, in banc review is only proper from a final judgment. *Id.* It follows, then, that where interlocutory appeal to the Appellate Court *is* proper, in banc review is proper as well.

heard by an in banc panel. The *Estep* Court contemplated as much in noting, in dicta, that

interlocutory rulings typically must be reserved for in banc review until the entry of final

judgment unless an exception applies:

> A reservation of points . . . simply saves the point or points in question for determination by the court in banc when a final, appealable judgment has been entered and does not act to bring the case to a halt until those issues are decided by a court in banc, unless, of course, an earlier appeal is allowed on some other recognized basis, such as the "collateral order doctrine" *or as an interlocutory order appealable under Md. Code (1974, 1978 Cum. Supp.), s 12-303 of the Courts Article.*

*Id.* at 423 n. 8 (emphasis supplied). We hold that CJP § 12-303 permits interlocutory appeal

to the circuit court sitting in banc in any circumstances where interlocutory appeal to the

Appellate Court is permissible.

Thus, we consider whether the Custody Order here was the type of custody order

for which CJP § 12-303(3)(x) permits interlocutory appeal. Mother argues that, because

Father was not "deprived" of custody entirely, the Custody Order was not entitled to an

interlocutory appeal.

We do not read CJP § 12-303(3)(x) to require complete denial of custody or access

for interlocutory appeal to be proper. In *Cabrera v. Mercado*, 230 Md. App. 37 (2016), we

held that a grant of sole legal and primary physical custody to a minor child's father was

sufficient for appellate jurisdiction to exist, as to issues of custody, under CJP § 12-

303(3)(x). *Id.* At 70. And we have held that "an interlocutory order depriving a parent of

an important decision-making right with respect to the parent's child can be appealable

under CJP section 12-303(3)(x)." *In re K.L.*, 252 Md. App. 148, 183 (2021). While perhaps

not all interlocutory appeals of custody orders are appropriate, particularly where not all

8

issues have been resolved, our case law construing CJP § 12-303(3)(x) makes clear that an appeal of the Custody Order to this Court would have been appropriate. Father was granted an access schedule on alternating weekends, not the 50-50 custody arrangement he sought. We conclude Father was deprived of the level of physical custody he requested. Consequently, in banc review was permissible in this case.

We now consider the merits of the in banc panel's ruling.

## II.     The In Banc Panel Was Correct That the Trial Court Provided an Inadequate Explanation of Its Ruling in the Custody Order.

### A.  Standard of Review

When reviewing a trial court's exercise of discretion, Maryland appellate courts' standard of review "is abuse of discretion, which is highly deferential to the trial court that is the judicial body that exercised its discretion." *Hartford*, 232 Md. App at 40 (citing *Goodman v. Comm. Credit Corp.*, 364 Md. 483, 491-92, (2001)). Similarly, when an in banc panel rules on the trial court's exercise of discretion, we consider whether the trial court abused its discretion. *See Guillaume*, 243 Md. App. at 12.

### B.  Parties' Contentions

Mother contends that there was sufficient evidence in the record before the trial court for it to order its custody and access schedule. She also argues that the in banc panel had an insufficient transcript of the trial court's proceedings before it.

Father responds that Mother misapprehends the in banc panel's ruling: it did not take issue with the sufficiency of factual support for the trial court's ruling, but whether its reasoning in support of that ruling was sufficient. He also argues that she waived the issue

9

of whether a sufficient transcript was before the in banc panel by failing to argue it below, and that, in any case, that is irrelevant to determining the adequacy of the court's explanation of its ruling.

## C. Analysis

The in banc panel held, in relevant part:

This reviewing Court's concern is not with the fact finding of [the trial judge] nor is it what is alleged by the Plaintiff. Rather, this Panel finds that the access schedule, and the reasons given for awarding the Defendant primary physical custody, do not follow logically from the facts found by the trial court and have no reasonable relationship to the trial court's announced objectives. *See North v. North*, 102 Md. App 1, 7 (1994).

First, the trial court detailed the Defendant's hyper-vigilance, lack of introspection and manipulation of the children causing a loyalty bind for the children. Yet, the trial court's basis for its award of primary physical custody to the defendant was that she was their "security blanket." The trial court's conclusion is inconsistent with the findings of fact.

To address the concerns identified by the trial court, the Defendant was ordered to have a psychological evaluation, the results of which would not be disclosed to anyone other than the Defendant. [The trial judge] also ordered the Defendant to engage with a new therapist to assist her with supportive services as he believed the Defendant's therapist was aligned with her client and had lost perspective and as a result was not helpful in regard to some of her issues. The trial court did not prohibit the Defendant from continuing with her current therapist, but stated that Defendant could only see her for purposes other than those that the trial court outlines. Unfortunately, neither of these orders can be monitored by the Court or a third party to determine whether the Defendant follows the trial court's orders and objectives.[4]

---

[4] As Father notes, Mother does not address this portion of the in banc panel's decision in her opening brief. We agree and perceive the in banc panel's remand and reversal of the Custody Order as to its provisions regarding Mother's therapy to be outside of this appeal.

10

Second, the trial court gave the Defendant two consecutive weeks of vacation and extended time during the year for winter and spring break. This is in contravention of the trial court's statement that the children could not be without their mother for five days.

* * *

Based upon the analysis made and conclusions reached by the trial court, this Panel finds that the schedule established by the trial court is not supported by the articulated reasoning of the trial court. Therefore, this Panel reverses the decision on this issue and remands this matter to the trial court for further explanation as to why the schedule established is in the best interest of the children, which may include consideration of another schedule. The trial court may hold further proceedings if deemed necessary.

Thus, the crux of the in banc panel's ruling was not whether the custody schedule itself constituted an abuse of discretion, but the trial court's reasoning for ordering that specific schedule. As such, Mother's argument about the absence of a record misses the mark. The issue here is not whether the trial court had an adequate factual record before it to order the access schedule it decided upon. Rather, the issue is whether the court sufficiently connected its findings of fact to its ruling.[5]

Consequently, we now consider the trial court's findings of fact and its analysis in support of its ruling. During its recounting of the testimony at trial, the court stated:

I agree with the court evaluator that the lack of overnights led to an estrangement of these children from [Father]. It's not the only factor, there were other factors that contributed to it, but that the lack of time that [Father]

---

[5] We thus do not consider Mother's argument as to whether the in banc panel had an adequate transcript before it. Even if Mother did not waive that argument by failing to argue it below, as Father asserts she did, it is beyond question that the in banc panel had an adequate record of the trial court's ruling. Because the sufficiency of the explanation in support of the court's ruling was the entire basis for the panel's remand and reversal, whether the panel had the entirety of the hearing transcript before it is not relevant to resolving this issue.

got access contributed to the children's anxiety about being with him overnight.

The in banc panel made particular note of the trial court's statements in issuing its oral ruling:

> The fact of the matter is yes, [Mother] in my view has some issues that she needs to deal with. And the father appears to be dealing with some of the issues that he has. But I'm looking at the best interests of the children at this point, and I know that [Father] has requested a 50-50, 2-2-5-5 approach.
>
> But I just do not feel that we are at that point where I can see the kids being away from the mother for five days in the 2-2-5-5. She is their security blanket. For all of her deficits, she is still the one who is most able at this point to care for them, and I cannot see that they would be best served by spending up to five days away from her, except as we come to vacation periods that we're about to talk about.

The court then granted Father custody on alternating weekends in the regular access schedule. The trial court's holiday schedule included several periods in which Father could take custody of the minor children for periods longer than five days, granting one half of the Thanksgiving, Christmas, and spring break holiday periods to either party. It also granted each parent two weeks with the children, consecutive or non-consecutive.

At the heart of abuse of discretion review is the notion that the trial court errs when it issues an unreasonable order. In matters of child custody, that typically means articulating the logical nexus between the court's factual findings regarding the best interests of the minor child and its custody order. The in banc panel cited *North v. North*, 102 Md. App. 1 (1994), in support of its ruling, and that case is instructive of the issues before us:

> "Abuse of discretion" is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have

12

defined in many different ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or . . . . when the ruling is "violative of fact and logic[.]"

\*     \*     \*

Our concern is not with the court's fact-finding; nor do we believe the restriction it imposed to be inherently unreasonable or unacceptable in any circumstance. A non-custodial parent is not entitled to overnight or extended visitation as a matter of law, and, indeed, Mr. North does not suggest to the contrary. **The problem is that the restriction does not follow logically from the facts found by the court and has no reasonable relationship to its announced objective.**

*Id.* at 13–15 (emphasis supplied).

Similarly, here, whether the circuit court erred in ordering its custody schedule is not before us in this appeal. But we agree with the in banc panel that there is a logical disconnect in the trial court's reasoning: given its finding that it was not in the minor children's best interest to be apart from Mother for periods of five days or more, it left unexplained why it would be in their best interest to be in Father's custody for longer holidays such as Father's two-week summer access. While it appears possible that the trial court meant that it would only be detrimental to the minor children to be parted from Mother for long periods during their regular schedule, we need not speculate. The in banc panel ordered the modest remedy of remand to the circuit court for reexplanation and reconsideration of its order, and we agree that this was an appropriate manner of clarifying the trial court's reasoning.

The scope of the remand is, as the in banc panel intended, limited to the trial court providing a fuller explanation of its thinking and, if necessary, reconsideration of the access

schedule. The panel ordered, and we affirm, that the trial court may hold further hearings in support of its expanded explanation, if needed.

**THE JUDGMENT OF THE IN BANC PANEL OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLANT TO PAY THE COSTS.**